**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

**REBECCA WILKERSON,**

       **Plaintiff,**

v.

**CORRECT CARE SOLUTIONS, LLC, d/b/a "Wellpath LLC";
CORRECTIONAL HEALTHCARE COMPANIES, LLC, d/b/a "CORRECTIONAL
      HEALTHCARE MANAGEMENT, INC.";
CORRECTIONAL HEALTHCARE PHYSICIANS II, P.C.;
DEPUTY KATIE HATHAWAY, in her individual capacity;
DEPUTY UNK, in his/her individual capacity;
NURSE HEATHER HANVEY, in her individual capacity;**

       **Defendants.**

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Rebecca Wilkerson, by and through her attorney, Daniel Shaffer, and now complains against all Defendants and requests trial by jury as follows:

**INTRODUCTION**

1.      This is an action brought by Rebecca Wilkerson, a 33-year-old woman, to vindicate serious deprivations of her constitutional rights.

2.      Ms. Wilkerson was a pre-trial detainee housed at the Mesa County Detention Facility ("MCDF") in May of 2017 where she suffered from serious pain, vomiting, shortness of breath, and

severe anxiety associated with symptoms of a heart attack and/or a pulmonary embolism due to the deliberately indifferent treatment that she received in the Mesa County jail.

3.     Ms. Wilkerson arrived at MCDF in 2016 with a number of medical conditions.

4.     Medical and detention staff at MCDF were consciously aware that Ms. Wilkerson needed emergent medical care.  Medical and detention staff ignored symptoms of a heart attack and/or a pulmonary embolism failed to procure proper and timely treatment for Ms. Wilkerson's serious medical condition.

5.     As a direct result of not receiving proper emergent care for a possible heart attack and/or pulmonary embolism, Ms. Wilkerson was left in serious pain on the floor of her cell for approximately 2 1/2 hours, scared that she was going to die.

6.     Defendants' conduct, under color of state law, proximately caused the deprivation of Ms. Wilkerson's federally protected rights.

## JURISDICTION and NOTICE

7.     This action arises under the Constitution and laws of the United States and is being brought pursuant to 42 U.S.C. § 1983.

8.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. Jurisdiction in support of attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

9.     Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All alleged events and omissions occurred in the State of Colorado where Defendants maintain offices and/or reside.

## PARTIES

**Plaintiff:**

10.     The Plaintiff, Rebecca Wilkerson, (hereinafter referred to as "Ms. Wilkerson") is a natural person.

11.     At all times hereto, Ms. Wilkerson was and is a Citizen of the State of Colorado, a state within the United States of America.

12.     Ms. Wilkerson currently lives in Denver County, Colorado with a physical address of 3600 Havana St., Denver, Colorado 80239.

**Defendants:**

13.     Defendant Correct Care Solutions, LLC ("CCS"), d/b/a Wellpath LLC, is a Delaware limited liability company doing business in the State of Colorado. Its principal street address located at 1283 Murfreesboro Road, Suite 500, Nashville, TN 37217. Its registered agent is listed as Corporate Creations Network Inc., with an address of 155 E. Boardwalk #490, Fort Collins, CO 80525. On information and belief, this company contracts with Mesa County to provide medical services to inmates and detainees at Jefferson County Detention Facility and supervises and implements such care.

14.     Defendant Correctional Healthcare Companies, LLC., a.k.a. Correctional Healthcare Companies, Inc., d/b/a Correctional Healthcare Management, Inc., is limited liability company registered in Delaware. Its principal street address is located at 1283 Murfreesboro Pike, Ste 500, Nashville, TN 37217. Its registered agent is listed as Corporate Creations Network Inc., with an address of 155 E. Boardwalk #490, Fort Collins, CO 80525.  On information and belief

- 3 -

this company contracts with Mesa County to provide medical services to inmates and detainees at Mesa County Detention Facility and supervises and implements such care.

15.    Defendant Correctional Healthcare Physicians II, P.C. is a Missouri corporation with its principal street address located at 1283 Murfreesboro Road, Suite 500, Nashville, TN 37217. Its registered agent is listed as Corporate Creations Network Inc., with an address of 3773 Cherry Creek North Drive #575, Denver, CO 80209. On information and belief, this Defendant and/or Defendant Correctional Healthcare Companies, Inc. and/or Defendant Correct Care Solutions, LLC contracted with Mesa County, Colorado to provide medical services to inmates and detainees at the Mesa County Detention Facility, and supervised and implemented such services.

16.    Defendant Correctional Care Solutions, LLC, Defendant Correctional Healthcare Companies, Inc., and Defendant Correctional Healthcare Physicians, P.C., and Correctional Healthcare Management, Inc. are collectively referred to as "CCS Defendants."

17.    CCS Defendants are proper entities to be sued under 42 U.S.C. § 1983 for their deliberately indifferent policies, practices, habits, customs, procedures, training, and supervision of staff, including individual Defendants, with respect to the provision of medical care and treatment for inmates with serious emergency medical needs.

18.    At all relevant times, the CCS Defendants were acting under color of state law and performing a central function of the state thus making them liable under § 1983. All the conduct of the CCS Defendants and its employees and agents is charged to the government, and CCS Defendants were acting jointly with the government actors.

- 4 -

19.     CCS Defendants are sued directly and indirectly for negligent supervision, negligent training of their staff, for failing to ensure the provision of appropriate care in the treatment of Ms. Wilkerson, for the acts and omissions of their agents and/or employees, and for the herein described acts by their involved employees, agents, staff, and affiliates, who were acting within the scope and course of their employment.

20.     Defendant Deputy Unknown POD Officer is a citizen of the United States and a resident of and domiciled in the State of Colorado.  At all times, relevant to the claims against him, Defendant UNK was acting under the color of state law in his/her capacity as a Deputy for the Mesa County Sheriff's Office.

21.     Defendant Deputy Katie Hathaway, is a citizen of the United States and a resident of and domiciled in the State of Colorado.  At all times, relevant to the claims against her, Defendant Hathaway was acting under the color of state law in her capacity as a Deputy for the Mesa County Sheriff's Office.

22.     At all times, relevant to the claims against her, Defendant Nurse, Heather Hanvey, was a citizen of the United States and a resident of and domiciled in the State of Colorado. Defendant Hanvey was an employee of "CCS" Defendants and acted under color of state law.

## FACTUAL ALLEGATIONS

23.     Ms. Wilkerson incorporates each paragraph of the Complaint as if fully restated therein.

24.     On May 6, 2017, at or about 10:30 p.m., Ms. Wilkerson was housed in Aspen pod in a locked cell with her cellmate.

25.    Ms. Wilkerson began to experience shortness of breath, heavy pressure and pain in her chest and profuse sweating.

26.    Sometime before 11:00 p.m. Ms. Wilkerson and her cellmate pushed the emergency button to contact master control to alert them to her condition.

27.    Master Control advised them to notify a POD Officer.

28.    Ms. Wilkerson then began vomiting and was semi-conscious.

29.    Deputy Katie Hathaway came by and Ms. Wilkerson's cellmate advised the Officer of Ms. Wilkerson's condition.

30.    Deputy Katie Hathaway opened the door for the cellmate to empty the trash can of vomit and observed Ms. Wilkerson on the floor of the cell in a semi-conscious state.

31.    Nurse Heather Hanvey didn't arrive to treat Ms. Wilkerson until 1:05 a.m. on May 7, 2017.

32.     She then called the attending physician, who directed that Ms. Wilkerson be sent to the hospital.

33.    However, that call for an ambulance didn't happen until 1:45 a.m. on May 7, 2016.

34.    Ms. Wilkerson received no emergent medical care for her serious medical condition for over 2.5 hours.

**STATEMENT OF CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
42 U.S.C. § 1983-Fourteenth Amendment Violation
Deliberate Indifference to Serious Medical Needs
(Against all Defendants)

- 6 -

35.    Ms. Wilkerson incorporates each paragraph of the Complaint as if restated fully therein.

36.    At all times, relevant to the allegations in this Complaint, Defendants acted under color of state law.

37.    Ms. Wilkerson was a citizen of Colorado and all the individual Defendants are persons under 42 U.S.C. § 1983.

38.    Ms. Wilkerson had a clearly established right under the Fourteenth Amendment to the U.S. Constitution to be free from deliberate indifference to her known serious medical needs.

39.    Each individual knew or should have known of this clearly established right at the time of her injury.

40.    At all times, relevant to the allegations in this Complaint, each individual Defendant knew of and disregarded the substantial risks associated with Ms. Wilkerson's serious medical condition.

41.    Nonetheless, with deliberate indifference to Ms. Wilkerson's constitutional right to adequate medical care, as provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Defendants knowingly failed to examine, treat, and/or care for Ms. Wilkerson's serious medical condition. They did so despite their knowledge of Ms. Wilkerson's serious medical needs, thereby causing her to suffer in excruciating pain and causing her to fear for her immediate health. Therefore, Defendants knew or were aware that Ms. Wilkerson faced a substantial risk of harm from persistent pain and disregarded this excessive risk by failing to take timely measures to reduce it.

42.     When Ms. Wilkerson and her cellmate alerted the individual Defendants to her need for emergent medical assistance, Defendants failed to seek timely emergent medical care to Ms. Wilkerson's clear need for medical attention.

43.     All the deliberately indifferent acts and/or omissions of each individual Defendant were performed within the scope of their official duties and employment.

44.     The acts or omissions of each individual Defendant were the legal and proximate cause of Ms. Wilkerson's severe pain and suffering for over 2 1/2 hours while in the Defendant's custody on May 6-7, 2017.

45.     The Defendants "CCS" has a policy and practice of unreasonable delay in emergent medical treatment of inmates at the Mesa County Jail.

46.     The policy and practice of "CCS" are the moving force behind the violation of the Plaintiff's constitutional rights.

47.     At the time of the events alleged herein, Defendants "CCS" was a national company with a disgraceful history of failing to provide constitutionally adequate medical care to inmates.

48.     There is an abundance of examples in Colorado, and nationwide, establishing that the "CCS" Defendants and the counties that employ them are deliberately indifferent in their policies, customs, and practices with respect to the medical needs, and constitutional rights, of inmates.

49.     In *McGill v. Correctional Healthcare Companies, Inc. et al.,* Case No. 1:13-cv-1080-RBJ-BNB (D. Colo.) Kenneth McGill sued Defendant CCS for failure to provide appropriate medical care in response to a stroke he suffered at the Jefferson County Detention Facility. Defendant CCS employees, acting with deliberate indifference, failed to take Mr. McGill to a

hospital where he could have received necessary emergency medical care. This case went to trial and resulted in a Plaintiff's verdict for approximately $11 million.

50.    In *Revilla v. Stanley Glanz, Sheriff of Tulsa County, et al.,* Case No. 4:13-cv-00315-JED-TLW (N.D. Okla.), several plaintiffs sued Defendant CCS for three deaths and one near fatality that occurred in the Tulsa County Jail. One plaintiff died due to bowel perforation and sepsis after medical staff refused to transport him to the hospital despite escalating and serious symptoms. Another detainee died from a heart attack after complaints of chest pain were ignored for days without emergency transport. A third detainee, who had a known history of cardiovascular problems, died after complaints of pain, nausea, and vomiting were ignored and emergency transportation was denied. It was alleged that "[t]here is a longstanding policy, practice or custom at the jail of CCS/CHM.CHMO and TCSO [the jail] of refusing to send inmates with emergent needs to the hospital…"

51.    In *Lara-Williams/Burke v. Glanz, et al.,* 4:11-cv-00720-JED-PJC (N.D. Okla.), an inmate named Elliot Earl Williams died after he was known to have gone days without food or water. Mr. Williams' serious and known medical needs were ignored by CHC medical staff because of a 'faking or malingering' diagnosis. Nurses expressly concluded that he was faking paralysis and ignored Mr. Williams' deteriorating and dehydrated condition. CHC staff moved him to a medical 'observation room' to videotape him *to prove* his paralysis was fake. Before he died, staff threw food at Mr. Williams and put water just outside his reach. It was alleged in that case that the CHC-related defendants "maintained a policy, practice and/or custom of severely limited in the use of off-site medical, mental health and diagnostic service providers, even in

emergent situations, in disregard to the known, obvious and excessive risks to the health and safety of inmates."

52.     In *Layton v. Board of County Commissioners of Oklahoma County, et al.,* Case No. 5:09-cv-01208-C (W.D. Okla.), Charles Holdstock died after the medical staff of a CCS- related company ignored lab results that Mr. Holdstock's kidneys were not functioning properly (and were failing to eliminate the toxic buildup of his heart medication). Mr. Holdstock was found unresponsive in his cell floor and later died in a hospital emergency room.

53.     In *Turley v. Correctional Healthcare Management, Inc., et al.,* Case No. 1:10-cv-02772-REB-BNB (D. Colo.). Robert Turley experienced severe pain in his throat when a piece of sandwich became lodged in his esophagus. Mr. Turley started to cough up blood and alerted the guards and medical personnel. The nurse who evaluated him simply gave him a Tylenol and advised him that he would have to wait to see the physician. Mr. Turley became hypoxic and unconscious, and had to be taken by ambulance to the hospital where he underwent emergency surgery for an esophageal perforation.

54.     In *Estate of Bruce R. Howard, et al. v. County of El Paso, Colorado et al.,* Case No. 1:10-cv-02740-CMA-MEH (D. Colo.), Bruce Howard died of a cardiac arrhythmia after CCS staff denied him his heart medication after his arrest. During his brief incarceration, Mr. Howard made repeated pleas to CCS medical staff for his heart medication that were ignored. He received no treatment despite his visible shakiness and assertions that he was hallucinating.

55.     In *Morittz v. Correctional Healthcare Companies, Inc., et al.,* Case No. 4:14-cv-00656-GKF-PJC (N.D. Okla.) Michael Morittz died in the Tulsa County Jail. CCS employees denied his repeated requests to administer his medications. Mr. Morittz's situation became critical,

and he was finally transported by ambulance to the emergency room where he remained on life support until his death.

56.    In *Guerrero v. Wichita County, Texas et al.,* Case No. 7:14-cv-00058-O (N.D. Tex.), CCS employees ignored Nicole Guerrero's clear signs of labor and left her alone in a solitary cell. CCS staff then neglected to transport her to the hospital for safe delivery of her child. The newborn was purplish and in need of immediate medical attention upon delivery, yet CCS staff neglected take steps to resuscitate the newborn or administer CPR. The baby was pronounced dead shortly after birth.

57.    A common thread in these cases is that "CCS" and related companies ignored obvious signs and symptoms to deny inmates access to necessary, emergent medical care.

58.    Various governmental institutions have made extensive reports of constitutional deficiencies in the care provided by CCS-related entities.

59.    In 2007, the National Commission on Correctional Health Care ("NCCCS") auditors found serious and systematic deficiencies in the medical care provided to Prisoners by CCS-related companies in the Tulsa Jail, including failure to triage sick calls and failure to provide emergent medical care in a timely manner.

60.    In 2008, the Department of Justice ("DOJ") found that the jail medical program, administered by a CCS-related entity, was constitutionally deficient in several aspects. Specifically, the DOJ found problems in "providing appropriate access to medical care during emergencies" citing a case where a woman went into premature labor and delivered while handcuffed to a chair. This happened after her complaints, such as her water had broken, were ignored. The DOJ found that there were "critical lapses in getting emergency medical care to

detainees." The DOJ also noted that they had conducted a previous tour in 2003 and that, despite many years to remedy the violations found, "we generally did not observe improved conditions at the time of our second tour."

61. In 2009, an Oklahoma Department of Health investigation indicated that deficiencies by CCS-related companies persisted with little to no change despite the abundant notice of the same from NCCCS and DOJ.

62. In 2010, during an NCCCS audit, high–level employees of CCS attempted to fraudulently change medical records to give appearance of compliance. NCCCS found deficient care, deficient investigation into deaths, and lack of timely diagnostic and specialty services. Despite this audit, CCS did not take the corrective measures necessary to alleviate the obvious and substantial risks to inmate health. High-level CCS employees repeatedly brought to CCS's attention to the many serious deficiencies, including chronic failures to triage medical requests, falsification of records, and refusals to treat inmates with life-threatening conditions, but the corporation failed to make any changes to the way CCS-related companies operated.

63. In November 2011, The Tulsa County Jail's own retained auditor found deficiencies in CCS's care.

64. In 2011, U.S. Immigration and Customs Enforcement and the U.S. Department of Homeland Security's office of Civil Rights and Civil liberties ("CRCL") also conducted a review of the medical care provided by CCS and related companies, reporting: "CRCL found a prevailing attitude among clinic staff of indifference…", "Nurses are undertrained. Not documenting or evaluating properly."

65.     But for custom and practice of untimely emergent medical care to inmates' serious medical needs that was established by the "CCS" Defendants and their failure to adequately train employees in meeting the serious emergent medical needs of inmates, Ms. Wilkerson would not have been subjected, in the form of a failure to provide her medical attention, to a deprivation of her constitutional rights. This deprivation was a natural and foreseeable consequence of the "CCS" Defendants' acts and omissions.

66.     The intentional actions or inactions of each individual Defendant as described herein intentionally deprived Ms. Wilkerson of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

67.     As a direct and proximate result of each individual Defendants' actions, Plaintiff's constitutional rights were violated and have suffered damages entitling him to compensatory damages against the Defendants. Plaintiff is also entitled to punitive damages against the deputy-Defendants to redress their willful, malicious, wanton and reckless conduct in violation of Plaintiff's civil rights.

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor against the Defendants, jointly and severally, and grant:

a)  Appropriate relief at law and equity;

b)  Compensatory and consequential damages, including damages for emotional distress, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c)  Attorney's fees and costs of this action, including expert witness fees on all claims allowed by law;

d) Punitive damages as to the Defendants to redress their willful, malicious, wanton and reckless conduct in violation of Plaintiff's civil rights;

e) Pre-and post-judgment interest at the lawful rate; and

f) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A JURY TRIAL ON ALL MATTERS SO TRIABLE.


Dated this 6th day of May 2019.

Respectfully submitted,

/s/Daniel R. Shaffer
Daniel R. Shaffer, #35661
405 Ridges Blvd., Suite B
Grand Junction, CO 81507
(970) 243-2552 Fax: (970) 243-3905
lawyerdan@danielshafferlaw.com

Attorney for Plaintiff
Rebecca Wilkerson

- 14 -